UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MISC. NO.: _____

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE
INTERCEPTION OF WIRE COMMUNICATIONS
OCCURRING ON A CELLULAR TELEPHONE
FACILITY BEARING ELECTRONIC SERIAL
NUMBER (ESN) 03310575789
WHICH IS CURRENTLY ASSIGNED TELEPHONE
NUMBER (786) 294-5990
_____/

## INSTRUCTIONS TO SUPERVISING AGENTS AND WIRETAP MONITORS

All supervising agents and monitors must be familiar with these instructions, as well as the affidavit, application, and orders. Copies have been provided. Each monitor shall acknowledge his familiarity with the requirements in the documents by signing the sheet attached to the back of these instructions. The original instructions will be returned to Special Agent John Stewart as soon as they are signed, and he will retain them. A copy of these instructions, as well as the affidavit, application, and orders will be kept at the listening post.

**The affidavit, application, and orders have not yet been given final approval. Should any subsequent changes be made to these documents, these changes will be indicated in red ink in the listening post copies. Monitors must familiarize themselves with these changes, if any, before they begin monitoring.**

The interceptions must remain confidential and not be disclosed to any other federal or state officers or anyone not involved with the actual monitoring of the wiretaps, other than those with a need to know for purposes of assisting with the investigation. The supervisory attorneys will specify those to whom the contents may be disclosed.

(1)     The interception devices should be activated as soon as possible after the interceptions are authorized by the United States District Judge.

(2)     **Minimization:**

Section 2518(5) of Title 18 provides that every order shall contain a provision that the interception should be conducted in such a way as to minimize the interception of communications not otherwise subject to the interception. This provision requires the interception procedures be conducted so as to reduce to the smallest possible number the interception of innocent communications. In this context, the word "possible" means feasible or practical consistent with the objective of obtaining evidence of criminal activity described in the

interception order. In the usual situations some interception must take place before it can be determined whether the minimization of interception of communication should be undertaken.

The applicable statutes do not specify how minimization is to be achieved. However, once it is determined that a conversation is not criminal in nature, the call should be minimized. Spot checking should be undertaken periodically for brief periods to ensure that the conversation has not turned to criminal activity. If it has, the call should be monitored accordingly.

This spot checking of minimized conversations should be done in a consistent manner. For example, if a conversation is minimized, you might spot check the conversation after one minute. The lengths between spot checks should be uniform. Thus, spot checking should be done throughout the conversation after one minute of minimizing. Variances from the pattern should be done for articulated reasons.

(a)     Monitors should understand how to react to interceptions of conversations which apparently relate to crimes other than those enumerated in the Order. Essentially, they should continue to intercept and record calls of this nature and report this fact to the supervising attorney as soon as possible, but not later than the next monitoring day. It is the attorney's duty to make an initial determination as to whether the conversations would be evidence of a crime not listed in the Order. If so, the supervising Judge will be informed at the next periodic report.

(b)     Privileged Communications. Section 2517(4) of Title 18 states that, "No otherwise privileged use or oral communications intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character." Privileged communications are those communications between a lawyer and client, a husband and a wife, and a clergyman and is penitent.

Once it has been ascertained by the monitor that a conversation falls in one of the privileged classes, then minimization must begin immediately. Spot checking is permissible to ascertain that the privilege is not being used as a subterfuge to cover otherwise interceptible conversation. The privileged nature of the conversation should be kept in mind when spot checking the conversation, i.e., be quick about it.

The privileges outlined above do not serve to protect criminal conversation. They may be recorded when the parties are jointly engaged in criminal activity. However, before such privileged conversations can be monitored for their criminal content, there must be a factual basis which supports a belief that they will be of a criminal nature. The factual basis must exist first. Without a supporting factual basis for the belief that privileged communications will have a criminal content, it is imperative that such conversation be immediately minimized.

(c)     The following minimization procedures should be employed:

2

(i) In the event the translator is not an investigative agency Special Agent, the translator, whether he or she is a language-trained support employee or under contract to the government, may be under the supervision of a Special Agent;

(ii) Conversations monitored by the translator under the guidance of a Special Agent may be minimized by the translator and an English translation of the pertinent criminal conversations may be furnished to the supervising a Special Agent;

(iii) Conversations which include suspected coded language may be recorded in their entirety until experienced Special Agents have eliminated suspected coded language as being unrelated to the offenses giving rise to this interception.

(3) **The log**:

Monitors should maintain a contemporaneous log by shifts, of all communications intercepted. They should note the date of the phone call; whether it is a call in or call out; the time and duration of the interception, noting the counter number; the person calling, the number called, the person receiving the call, if known, the subject; language; to an abbreviated extent, the content of all pertinent conversations; the type of criminal activity - corruption, narcotics, other; and the cassette tape number and side which is being used.

Any peculiarities, such as codes, foreign languages, or background sounds, should also be noted. When the interception of the communication is terminated for purposes of minimization, that fact should also be noted. The log should record the names of the personnel in each shift and the function performed by each; malfunctions of the equipment; interception of possibly privileged conversations; conversations relative to crimes not specified in the original interception Order. Each entry in the log should be initialed and dated by the person making it.

The computer will automatically note the date and time of the intercepted call, the disk location of the communication, the duration of interception, and whether the intercepted call was incoming or outgoing, and the number called, if outgoing.

The computer also should automatically record the name of the monitoring agent, as indicated by the log-on password.

The log should note any malfunctions of the equipment or interruptions in the monitoring for any other reason, and the time spans thereof. The log should also note interceptions of possibly privileged conversations or conversations relating to crimes not specified in the original interception order.

At the conclusion of each shift, a memorandum should be posted at the monitoring site, providing information regarding any malfunctions and interruptions, as well as information regarding interception of privileged communications, conversations regarding new crimes, or other pertinent data.

3

In addition, to ensure the integrity of the monitoring process, each of the monitoring agents on duty when the recordings are made, the Supervising Agents, the Supervising Case Agent responsible for assuring chain-of-custody, and all other agents who are present at the monitoring site should sign-in and sign-out, as required. Monitoring agents will be provided passwords with which to log on to the computer system at the beginning of their shifts; all monitoring agents must log out of the computer system whenever they leave their workstations and at the conclusion of their shifts. No other person(s) should be given access to the computer system, other than the monitoring agents and, as needed, the Supervising Agents and the Supervising Case Agent.

(4)     **Duties of the monitors**:

The Monitors have initial responsibility in the following circumstances:

(a)     In the event conversations between individuals in the relationship of husband and wife, clergyman and penitent, or attorney and client are intercepted, the monitor must notify the supervising agent as soon as practical. Do not disclose the contents of a privileged call to the supervising agent. Another agent and attorney have been designated to handle interception of privileged calls.

(b)     In the event conversations relating to crimes other than those specified in the Court Order are intercepted, the monitor must notify the supervising agent as soon as possible.

(5)     **Duties of supervising agents**:

The Supervising Agent should prepare and deliver to the supervising attorney daily written reports. They should show the nature and scope of the interception for that day. For instance, they should indicate the number of relevant conversations that were intercepted, the number of non-pertinent conversations terminated, whether any of the individuals named in the Order was intercepted, whether any new participants were identified and whether any problems have arisen. For example, equipment malfunctions should be noted. The interception of privileged communications or evidence of other crimes should be noted. These daily reports should be made even throughout a weekend or holiday period. A copy of the corresponding day's log should accompany each report. The supervising agent's duties include providing for the integrity and admissibility of recordings by following the principles set forth herein and ensuring proper termination of the interception either on the days specified in the Court Order or when the objects of the interception have been accomplished, whichever comes first.

(6)     **Duties of the technical agent**:

The technical agent should test the wire pairs with the hand set and make a test call at the inception of the authorized period of interception to ensure that the equipment is connected to the proper telephone line. Every technical act performed before preparation and

subsequent to the Order should be carefully recorded for future Court use. The agent who places the test call should be prepared to testify at trial about the procedure he or she used.

(7)     **Identifying voices**:

Each monitoring agent and supervising agent should attempt to identify voices of persons intercepted for future Court purposes.

(8)     **Recording intercepted communications**:

Title 18, United States Code, Section 2518(8)(a) directs that the contents of an intercepted communication "shall, if possible, be recorded on tape or wire or other comparable device." This requirement is <u>mandatory</u> and simply means that all conversations which are monitored must be recorded. All intercepted communications in this investigation, including "spot monitoring," will be recorded on an original "magneto optical disc" or "MO". Each disc has the ability to hold approximately 160 hours of conversation; therefore, only one original disc should be needed during the period of interception. However, if it becomes filled to capacity, the disc will be replaced by the Systems Administrator and Supervising Case Agent, in accordance with the procedures set forth below.

The optical disc system is automatically set up to make a duplicate copy as the original is being recorded. An additional working copy or copies can then be created from the duplicate original disc.

(9)     **Protection of the recording**:

The recording which is made must be preserved in such a way as to prevent editing or alteration. To insure that the recording in this interception is preserved, the following procedures should be adhered to:

A.     The original magneto optical disc will be installed by a Systems Administrator, witnessed by the Supervising Case Agent, and will be "password protected." No persons other than the Systems Administrator and any back-up administrator(s) will have access to the disc until such time as it is to be removed for sealing by the Court. This original disc should be designated as the original "evidence" copy. The Systems Administrator and the Supervising Case Agent should be prepared to testify that the original disc was installed by the Systems Administrator and witnessed by the agent, that it was "password protected" at the time of installation, and that it was never accessed, altered or edited in any way throughout the course of the interception period.

B.     At the end of the interception period, or when the disc becomes filled to capacity, whichever comes first, the original magneto optical disc should be removed from the optical disc library and placed in a sealed envelope, box, or similar container. The disc should be kept in the custody of the Supervising Case Agent and/or the investigative agency until such time as it is presented to the Court for sealing.

   C. A chain-of-custody form should accompany the original optical disc recording. On this form should be a brief statement, signed by the Supervising Case Agent and a witnessing agent, which identifies:

     i. the order authorizing the recorded interceptions (by Court number, if possible);
     ii. the date and time period of interception; and
     iii. the place or facility where and over which the recorded communications occurred.

   D. The chain-of-custody form should indicate, to whom, if anyone, the Supervising Case Agent transferred custody of the original recording, and the date and time of transfer. Each subsequent transfer, including that to the Court, should be noted on the form. The Supervising Case Agent should affix a label and/or other evidence designation to the original optical disc to identify it as corresponding to the accompanying chain-of-custody form. The label should be signed and dated by the agent.

   E. Immediately upon the expiration of the interception period, the original evidence recording should be made available to the Court for sealing in accordance with the Court's instructions.

  **(10) Procedure when no recording can be made:**

   In the event of an equipment failure, the following procedure should be followed:

   A. In the event of an equipment problem that does not amount to a total system failure, the monitoring agent should prepare a typed/written memorandum contemporaneously with his/her overhearing of the conversation.

   B. The memorandum should be as near to a verbatim description of the conversation as possible.

   C. The memorandum should close with a brief statement, showing the date and time that the communications were intercepted. The memorandum should be stored on the computer hard drive, and a hard copy of the memorandum should be printed, signed by the monitoring agent, and provided to the Supervising Agent.

   D. The Supervising Agent should approve the memorandum by initials or signature.

   E. The memorandum should be treated as an original recording, that is, the procedures outlined below should be applied.

   F. The Supervising Attorney must be advised of any equipment failure or malfunction immediately, so that the Court may be advised in the next periodic report. In addition, a copy of the monitoring agent's memorandum will be provided to the Court.

   If a total system failure occurs, all monitoring will cease. The Supervising Case Agent and the Supervising Attorney should be made aware of the failure <u>immediately</u> so that appropriate technical assistance may be obtained.

  **(11) Custody of the recording:**

   <u>Immediately</u> upon termination of the interception, the original recordings of the conversations should be submitted by the supervisory attorney to the Judge authorizing the

6

interception. The Judge will then order the original recordings sealed and order their place of custody. As most Courts and their clerks are not equipped to safeguard evidence, the supervisory attorney will request that the Court order the custody of the sealed recordings to remain with the investigative agency which undertook the surveillance. The sealing should be done under the supervision of the authorizing Judge, but can be done by any United States District Judge.

Any delay should be carefully documented to show a good faith attempt at compliance with the statute by the Government.

If the Court so orders, it is the responsibility of the investigative agency to maintain the recordings without breaking the seal placed upon it by Court order. The statute directs that the unbroken seal of the Court or an explanation for its absence is prerequisite for admitting the recordings in evidence at trial. The investigative agency must be prepared to maintain safely the original recordings for a minimum period of ten years. Even after this ten year period the recording may only be destroyed pursuant to an Order of the Court which issued the original authorization to intercept.

(12)   **Duplicate recordings**:

The statute allows the investigative agency to make duplicate recordings of the original tape before the original is sealed. Since the sealed original will, as a practical matter, be unavailable for replay by the investigative agency or the Department of Justice, at least two duplicates should always be made from the original before sealing. Some agencies record a duplicate original "work copy" of the tape contemporaneous with the recording of the original.

(13)   **Termination of the interception**:

The interception must be terminated either when the objects have been accomplished or on the specified date, which is 30 days after the initial interception. If interception is continued beyond that point, evidence derived from the interception will not be construed as obtained pursuant to the Court Order and will be inadmissible. Further, agents and monitors that intercept after it has expired may be subject to criminal and civil liability.

I will be available 24 hours a day and would expect calls about anything of significance or any problems that may arise. My office phone number is (305) 961-9292. My cell phone is (786) 564-9075.

**Please note that some or all of these instructions could be changed at any time depending on particular facts and circumstances.**

JACQUELINE M. ARANGO
ASSISTANT UNITED STATES ATTORNEY

7

## STATEMENT OF MONITORING AGENTS

I declare that I have read the following documents and am familiar with their contents:

1. The Supervising Attorney's Memorandum to Monitoring Agents and Specially-Deputized Officers;

2. The Affidavit of Special Agent ~~Manuel Recio~~ John Stewart in support of the Application For an Order Authorizing the Continued Interception of Wire Communications; and

3. The Order Authorizing the Continued Interception of Wire Communications.

I further declare that I will conduct interception in accordance with the requirements set forth in the above documents.

| DATE | NAME (printed) | SIGNATURE | AGENCY |
|---|---|---|---|
| 02/17/2006 | Andrew E. Cenlen | [signature] | FBI |
| 2/17/06 | John P. Stewart | [signature] | FBI |
| 2/17/06 | Anthony Velazquez | [signature] | FBI |
| 2/17/06 | Andrew Jansson | [signature] | FBI |
| 2/18/2006 | Jason Miller | [signature] | FBI |
| 2-18-06 | Juan L. Hernandez | [signature] | MPD JTTF |
| 2/18/06 | [signature] | [signature] | FBI |
| 2/18/06 | Joseph F. Gaboto | [signature] | FBI |
| 2/17/06 | Janet Larkidon | [signature] | FBI |
| 2/20/06 | Bethany Gay Cain | [signature] | FBI |

| DATE | NAME (printed) | SIGNATURE | AGENCY |
|---|---|---|---|
| 2/20/06 | JUAN J. RUANO | [signature] | MARS JTF |
| 2/20/06 | James E Bentley | James E Bentley | FBI |
| 2/21/06 | TIMOTHY SCOTT | [signature] | ICE |
| 2/21/06 | Julio R. Pinera | [signature] | MPD |
| 2/21/06 | William R. ?? | [signature] | YSSS |
| 2/21/06 | IRA ROSENBERG | [signature] | MPD MIRAMAR |
| 2/22/06 | Karen Shioemer | [signature] | FBI |
| 2/22/06 | RYAN STUART | KMStuart | FBI |
| 2/22/06 | Edwin O. Cordova | [signature] | FBI |
| 2/23/06 | Paul A. Carpinteri | [signature] | FBI |
| 2/23/06 | Carlos A. Rosello | [signature] | MPD |
| 2/24/06 | Jorge L. Gonzalez | [signature] | MPD |
| 2/27/06 | Michael Keck | [signature] | ICE |
| 3/3/06 | MICHAEL E. VISTED | M/E Visted | FBI |
| 3/10/06 | John-David Bradley | John David Bradley | USSS |
| 3/10/2006 | Matthew J. Pavelko | [signature] | FBI |
| 3/11/06 | K McDonald | [signature] | FBI |
| 3/11/06 | ?? Wall | [signature] | FBI |
| 3/14/06 | K Rivera | [signature] | FBI |
| 4/2/06 | P Ray | Pamela Ray | FBI |
| 4/3/06 | Anna M Rinaldo | [signature] | FBI |
| 4/3/06 | Shauntele Davis | [signature] | FBI |
| 4/6/06 | William R Emerson | [signature] | BSO |

9

| Date | Printed Name | Signature | Agency |
|---|---|---|---|
| 4/10 | TIMOTHY M. ALVORD | [signature] | FBI |
| 4/13 | DAVID R LEW | [signature] | FBI |
| 4/30/06 | Erik B Sullenberger | [signature] | FBI |